UNITED STATES of America ex rel. Sheik Abdel Rahim AHMAD (formerly known as Clarence Hooks), Petitioner,

v.

Walter W. REDMAN and the Attorney General of the State of Delaware, Respondents.

Civ. A. No. 84–294 MMS.

United States District Court, D. Delaware.

Dec. 18, 1984.

Melvyn I. Monzack, and Francis A. Monaco, Jr., Walsh & Monzack, Wilmington, Del., for petitioner.

John A. Parkins, Jr., and Loren C. Meyers, Deputy Attys. Gen., Dept. of Justice, Wilmington, Del., for respondents.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

Sheik Abdel Rahim Ahmad (formerly known as Clarence Hooks),[1] has, for the

second time, filed a petition for a writ of habeas corpus in this Court. He is presently serving a life sentence after his conviction in 1976 of first degree murder (felony murder), first degree robbery, and conspiracy in the second degree. Hooks' first habeas petition, filed on June 8, 1980, and consolidated with the petitions of his two codefendants, included numerous claims for relief. The Court dismissed several of those claims on the grounds that petitioners had neither satisfied the exhaustion requirement in state court, nor identified for the federal court any particular federal rights abridged by the alleged trial errors. *United States ex rel. Abubake v. Redman,* 521 F.Supp. 963, 967 (D.Del.1981), *vacated without opinion,* 696 F.2d 980 (3d Cir. 1982). The Court did, however, reach the merits of Hooks' claim that the trial court erred in permitting the introduction into evidence of certain incriminating statements obtained in violation of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). On that issue, the Court found that there indeed had been a *Miranda* violation, but held that the admission of petitioner's statements at trial was harmless error. 521 F.Supp. at 977. The remaining allegations in Hooks' first habeas petition were denied and probable cause for appeal was certified only on the *Miranda* claim.

While Hooks' appeal was pending, the Supreme Court concluded in *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), that a federal court should dismiss habeas corpus petitions containing both exhausted and unexhausted claims. A plurality of the Court also noted that a total exhaustion rule would not impair speedy relief since the petitioner could amend his petition to delete nonexhausted claims albeit at the risk of dismissal of subsequent federal petitions. On October 4, 1982, the Court of Appeals for the Third Circuit vacated and remanded the District Court decision with instructions to dismiss

---

1. I will hereafter refer to petitioner as Clarence Hooks to prevent confusion between this Opinion and the earlier decisions in this matter.

the petition to allow petitioner "to either exhaust his unexhausted claims through a state proceeding or delete them." *Abubake v. Redman*, 696 F.2d 980 (3d Cir.1982) (order). On October 6, 1982, the District Court dismissed the petition in accordance with the terms ordered by the Court of Appeals.

Hooks subsequently filed a second petition for a writ of habeas corpus, dated May 25, 1984, which is the subject of this action. The May 25th petition asserts only the *Miranda* claim. The parties have elected to rely on their arguments as presented to the Court of Appeals in 1982, supplemented by a hearing before this Court. They have proffered no additional authority to induce the Court to depart from its earlier holding. After review of my decision in *Abubake v. Redman*, 521 F.Supp. 963 (D.Del.1981), and thorough consideration of the arguments presented by the parties, I remain of the view that Hooks' petition for habeas corpus must be denied. The facts, reasoning and conclusion set forth in *Abubake v. Redman* are adopted. As a consequence there will be only a brief discussion on those points which merit further attention.

■ The State's argument that *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979), as interpreted by the Third Circuit appellate court in *United States v. Velasquez*, 626 F.2d 314 (3d Cir.1980), compels a finding that petitioner knowingly and intentionally waived his *Miranda* rights is again rejected. Although those decisions hold that a waiver may be implied, they affirm the well-established view that the particular facts and circumstances must, in each case, be considered. *Butler*, 441 U.S. at 374–75, 99 S.Ct. at 1757–58; *Velasquez*, 626 F.2d at 320. As the Supreme Court reiterated in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981),[2] a waiver

"must not only be voluntary, but [must] constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused." *Id.* at 482, 101 S.Ct. at 1883 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). The question whether Hooks understood his rights and spoke voluntarily is distinct from the question whether he "knowingly and intelligently" waived his *Miranda* protection. As was noted when this case was first before me, there is no indication on the record that Hooks in any way appreciated the consequences of relinquishment of his right to remain silent. *See Johnson v. New Jersey*, 384 U.S. 719, 729–30, 86 S.Ct. 1772, 1778–79, 16 L.Ed.2d 882 (1966). Indeed, the record evinces an affirmative attempt on the part of the interrogating officer to influence Hooks' judgment in this regard. Although the question remains a close one, it must be remembered that the state had the burden, upon attempting to introduce plaintiff's statement at trial, of establishing the existence of a waiver. *Butler*, 441 U.S. at 373, 99 S.Ct. at 1757. The Court adheres to its earlier view that the state failed to meet its burden of proving that Hooks' decision to make incriminatory statements was the product of a knowing and intelligent waiver.

■ Hooks' petition for habeas corpus must nonetheless be denied as I remain unpersuaded that the admission of his statements at trial was more than a harmless error. The weight of authority runs contrary to petitioner's claim that a rule of "harmful per se" should be applied to *Miranda* violations. Although the Supreme Court has never ruled definitively on this

---

**2.** The Supreme Court has recently prohibited the retroactive application of the rule of *Edwards* which permits the police to resume interrogation of a suspect who has invoked the right to counsel only if the suspect initiates further communication. *See Solem v. Stumes*, —— U.S. ——, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984). I do not read *Stumes* to affect this Court's reference to the *Edwards* decision. As the parties concede, *Edwards* has been cited only for its restatement of the existing law in this area, not for its articulation of a new "bright-line rule." The holding of *Stumes* is therefore inapposite to the case at bar.

specific issue, petitioner has provided no compelling reason to treat testimony admitted despite the lack of an adequate waiver of *Miranda* rights differently from testimony obtained in contravention of other constitutional principles. *See, e.g., Milton v. Wainwright,* 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972) (admission of statements elicited in violation of petitioner's Sixth Amendment right to counsel; harmless error rule applied); *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (harmless error rule applied to prosecutor's comments and judge's instruction to jury concerning defendant's failure to testify). There is ample protection of the rights of the accused, and sufficient symmetry with the goals of the exclusionary rule, under the majority view which upholds a conviction obtained in the face of a *Miranda* violation only if the remaining evidence is "not only sufficient to support the verdict but so overwhelmingly so as to establish guilt of the accused beyond a reasonable doubt." *United States v. Baldwin,* 691 F.2d 718, 723–24 (5th Cir.1982) (citation omitted). *See also United States v. Ramirez,* 710 F.2d 535 (9th Cir.1983); *United States v. Espinosa-Orlando,* 710 F.2d 535 (9th Cir.1983); *United States v. Moody,* 649 F.2d 124 (2d Cir.1981); *Collins v. Brierly,* 492 F.2d 735, 743 (3d Cir.) (Adams, J., dissenting), *cert. denied,* 419 U.S. 877, 95 S.Ct. 140, 42 L.Ed.2d 116 (1974); *cf. United States v. Cummiskey,* 728 F.2d 200 (3d Cir.1984) (harmless error rule applied to prosecutor's comments at trial on defendant's post-arrest silence).

■ Petitioner submits that his conviction cannot stand, even if the traditional harmless error rule is applied. The record reflects, however, that the jury was presented with overwhelming evidence of petitioner's guilt. The effect of petitioner's statements on the jury's decision, in light of this evidence, must have been negligible.

In his statements to the interrogating officer, Hooks admitted ownership of a blue car. He further confessed that his car had broken down in the Cumberland Dairy parking lot after he had gone to buy milk.

According to other evidence, that parking lot was the agreed location for the getaway car. Hooks argues that these inadmissible statements placed him at the scene of the crime and contributed to the guilty verdict. Review of the record reveals, however, that an abundance of evidence from a variety of sources connected Hooks to the conspiracy and dictated a verdict of guilty.

The most damaging testimony came from Gregory Payne, a codefendant who testified as part of a plea bargain. Payne outlined every aspect of the crime from its very inception to its culmination. Hooks' role in the illegal events was depicted in detail. Undoubtedly, it was crucial that the jury believe Payne in order to convict the defendants. Petitioner complains that his statements corroborated Payne's testimony and bolstered Payne's credibility. Validation of Payne's testimony came, however, from several witnesses who overwhelmingly established Payne's truthfulness and corroborated Hooks' culpability. First, Hooks' employer verified that Hooks left work early on the day of the crime. Second, his wife reported that Hooks and his codefendants were at her home on the day in question, changed clothes there, asked for silk stockings, then left in the three cars which Payne alleged were used in the robbery, Hooks' blue Chevy among them. Third, a state trooper saw black males at the Cumberland Dairy clustered around a car parked with its hood up. When they saw the trooper, the men allegedly fled. Finally, a couple who lived near the scene of the robbery testified that some of the defendants, including Hooks, came to their home on the night of the crime, used their phone and changed their clothes. Hooks allegedly returned to the house the next day to find the booty from the robbery which had been stashed in a car outside.

The jury's return of a guilty verdict for all of the defendants reflects its acceptance of Payne's veracity. Given the profusion of testimony corroborating Payne's statements, there was no room to doubt Payne's story. Furthermore, the independent evi-

dence unquestionably tied Hooks to the conspiracy, at least with respect to his role in events prior and subsequent to the robbery itself. Once Hooks' involvement in the conspiracy was established, it was not also necessary to prove his presence at the scene of the crime; Hooks could be found guilty of those offenses committed in furtherance of the conspiracy and within the reasonably foreseeable scope of the conspiratorial agreement. *Pinkerton v. United States,* 328 U.S. 640, 645–48, 66 S.Ct. 1180, 1183–85, 90 L.Ed. 1489 (1946). Thus, Hooks' own statements were superfluous to the state's proof of its case and their admission at trial must be viewed as harmless beyond a reasonable doubt. *See Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Accordingly, an order will be entered denying the petition for habeas corpus. Because a novel question of law is presented in petitioner's request that a per se rule be applied when a defendant's statements are erroneously admitted at trial without proof of an adequate waiver of *Miranda,* I will grant a certificate of probable cause for appeal.