Sheik Abdel Rahim AHMAD, formerly
known as Clarence Hooks, Appellant,

v.

Walter W. REDMAN, Warden D.C.C.,
and Attorney General of the State
of Delaware.

No. 85–5042.

United States Court of Appeals,
Third Circuit.

Argued Aug. 14, 1985.

Decided Jan. 27, 1986.*

As Amended Feb. 11, 1986.

Rehearing and Rehearing In Banc
Denied Feb. 26, 1986.

---

* Held C.A.V. pending disposition by the Supreme
Court in *Miller v. Fenton,* — U.S. ——, 106 S.Ct.
445, 88 L.Ed.2d 405 (1985).

Loren C. Meyers (Argued), Deputy Atty. Gen., Dept. of Justice, Wilmington, Del., for appellees.

Walsh and Monzack, Professional Ass'n, Melvyn I. Monzack (Argued), Francis A. Monaco, Jr., Wilmington, Del., for appellant.

Before ADAMS, GIBBONS and WEIS, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

This is an appeal from a district court's order denying a writ of habeas corpus. Petitioner was convicted in state court of murder, conspiracy, and robbery. The district court found that the petitioner had not validly waived his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), that statements obtained from him through custodial interrogation were therefore improperly admitted at his trial, but that the admission of the statements was harmless error and thus did not require a new trial. We believe that the district court applied an incorrect standard of review in considering the finding by the state court that the petitioner had validly waived his *Miranda* rights. Because the state courts' factual findings are fairly supported by the record and the state courts applied the correct legal standards, we may not overturn their determination that petitioner knowingly and intelligently waived his rights. Accordingly, we will affirm the order denying petitioner's request for habeas corpus relief.

### I.

Sheik Abdel Rahim Ahmad (previously known and hereinafter referred to as Clarence Hooks) was convicted in 1976 in Delaware Superior Court of first degree murder, conspiracy, and robbery for his involvement in the 1975 hold-up of a liquor store, during which a store clerk was killed. Hooks was not present in the liquor store at the time of the robbery or homicide, but was charged under the Delaware felony murder statute, 11 Del.Code Ann. § 271

(1979), and under a conspiracy theory for his participation in the planning and cover-up of the crimes.

Shortly after his arrest, Hooks was interrogated by a Delaware State police officer in the jail cell where he was being held. At the outset of the interrogation, the officer informed Hooks of his *Miranda* rights, but when the officer asked Hooks whether he understood his rights, the defendant's only reply was a laconic Arabic phrase—"as salaam alaikum." Hooks gave the same response to further questions. The officer then told Hooks that he did not understand his replies, but was going to tell Hooks what the police "knew" about his role in the robbery and murder. The officer told Hooks that it was known that he had a blue car, that Hooks had driven four men to Delaware in it on the day of the crimes, and that those men had robbed a liquor store. App. at 213. After relating this information, the officer asked Hooks whether it was accurate. Hooks proceeded to answer the officer's questions in English. Several of his responses were inculpatory, placing him near the scene of the crime at the time of its commission.

Before trial, Hooks moved to suppress the statements he had made to the police officer on the ground that they were obtained in violation of his rights under *Miranda v. Arizona.* His motion was denied. The evidence against Hooks at trial consisted largely of the testimony of a codefendant, Gregory Payne, who had agreed to testify for the state as part of a plea arrangement. Payne's testimony was corroborated in part by a number of witnesses, including the Childresses, a couple in whose home the robbers had taken refuge after the crime. The prosecution also introduced the inculpatory statements made by Hooks during his interrogation by the police officer. Hooks was convicted on all three charges.

Hooks was sentenced to death on the murder charge, but his sentence was later commuted to life imprisonment without parole when the Delaware Supreme Court

held that the death sentence was unconstitutional as applied to him. *See State v. Spence,* 367 A.2d 983 (Del.1976). On the appeal of his conviction, Hooks again argued that the incriminating admissions introduced against him at his trial had been obtained in violation of his *Miranda* rights. The Delaware Supreme Court rejected this claim and affirmed the conviction. *See Hooks v. State,* 416 A.2d 189 (Del.1980).

On July 8, 1980, Hooks filed a petition for a writ of habeas corpus in the federal district court for the District of Delaware, alleging a number of violations of his constitutional rights. Once more he asserted that the statements made by him during his interrogation by the police officer had been obtained in violation of his *Miranda* rights. The district court rejected all of petitioner's constitutional claims except the *Miranda* claim. *See United States ex rel. Abubake v. Redman,* 521 F.Supp. 963 (D.Del.1981). It found that, although Hooks had been informed of his *Miranda* rights and understood them, and although his statements had been made voluntarily, he had neither explicitly nor implicitly waived his *Miranda* rights. It therefore concluded that the statements by Hooks were improperly admitted at his trial. However, because the district court found that this error was harmless beyond a reasonable doubt under the standards set forth in *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), and *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), it denied the petition for habeas relief.

The district court did recognize that it was obligated under 28 U.S.C. § 2254(d) (1982) to defer to the Delaware courts' factual findings on the issue of waiver if they were fairly supported by the record. *See Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). However, the district court concluded that the record contained insufficient evidence to support a finding that Hooks' "decision to make incriminating statements was the result of a knowing and intelligent waiver." 521 F.Supp. at 977. It therefore proceeded to analyze the waiver issue on a plenary basis

and to conclude that Hooks did not effectively waive his rights.

Hooks appealed the district court's decision to this Court. While that appeal was pending, the Supreme Court announced its decision in *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), holding that a federal court must dismiss habeas corpus petitions that contain both exhausted and unexhausted claims. On October 4, 1982, we therefore vacated the district court's decision with instructions to dismiss the petition to allow Hooks either to exhaust his unexhausted claims in the Delaware courts or to delete them. *See Abubake v. Redman,* 696 F.2d 980 (3d Cir. 1982) (mem.).

On May 25, 1984, Hooks filed a second petition for a writ of habeas corpus, which is the subject of this appeal. In the petition he asserted only the claim based on the alleged violation of his *Miranda* rights. The district court's decision dismissing Hooks' petition incorporated the facts, reasoning, and conclusion set forth in its 1981 opinion. *See United States ex rel. Abubake v. Redman,* 599 F.Supp. 802 (D.Del. 1984). References to the district court's disposition of the petition are therefore to its opinion of 1981.

Hooks' appeal from the district court's 1984 order denying habeas relief was held in abeyance by this Court pending the Supreme Court's decision in *Miller v. Fenton,* —— U.S. ——, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985), and to allow the parties to submit supplemental briefs in light of that opinion.

We now conclude that the district court applied an erroneous legal standard in determining whether Hooks validly waived his *Miranda* rights. Deferring to the state courts' findings of fact as we must under § 2254(d), and applying the correct legal standard, we conclude that Hooks knowingly and intelligently waived his rights under *Miranda.* The district court's order denying the petition for habeas relief was therefore proper.

## II.

Section 2254(d) provides that the factual findings of state courts must be

presumed correct by a federal habeas court if they are fairly supported by the record.[1] However, determinations on mixed questions of law and fact or on purely legal issues are not subject to the presumption. *See Wainwright v. Witt,* — U.S. —, 105 S.Ct. 844, 853–55, 83 L.Ed.2d 841 (1985); *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984); *Holland v. Attorney General,* 777 F.2d 150, 153 n. 2 (3d Cir.1985). When reviewing conclusions reached by a state court on mixed or legal issues, a federal habeas tribunal's standard of review is plenary. *Wainwright,* 105 S.Ct. at 854 n. 8; *Holland, supra.* The statutory presumption of correctness does attach, however, to the subsidiary findings of historical fact that are relevant to the resolution of mixed questions and questions of law. *See Miller v. Fenton,* — U.S. —, —, 106 S.Ct. 445, 454, 88 L.Ed.2d 405 (1985); *Marshall v. Lonberger,* 459 U.S. 422, 431–32, 103 S.Ct. 843, 849–50, 74 L.Ed.2d 646 (1983).

The state courts in this case found that Hooks was fully informed of his rights under *Miranda* and that he understood those rights. *See* Voir Dire Examination of Hooks at 71; *Hooks v. State,* 416 A.2d 189, 200 (Del.1980). They further concluded that, when Hooks responded to the questions of the interrogating police officer, he did so voluntarily. *Hooks,* 416 A.2d at 200. Consequently, they held that Hooks had validly waived his *Miranda* rights.

Our standard of review over the state courts' determination that Hooks validly waived his *Miranda* rights turns upon whether that determination is, for the purposes of § 2254(d), one of pure fact or one involving factual and legal components. This question was expressly left open by the Supreme Court in *Miller v. Fenton,* its most recent § 2254(d) opinion. There, while holding that the voluntariness of a confession under the due process clause is a legal question subject to plenary review in a federal habeas proceeding, the Court noted that "[t]he present case presents no occasion for us to address the question whether federal habeas courts must accord the statutory presumption of correctness to state court findings concerning the validity of a waiver [of *Miranda* rights]." — U.S. at — n. 3, 106 S.Ct. at 449 n. 3.

Before a court may conclude that a defendant validly waived his *Miranda* rights, it must first find that the defendant was aware of and understood his rights. *See Edwards v. Arizona,* 451 U.S. 477, 484, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378 (1981) (after being advised of his *Miranda* rights, a defendant may validly waive his rights and respond to interrogation); *North Carolina v. Butler,* 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979). The findings of state courts on these questions are purely factual in nature, involving a determination as to "what happened" during an interrogation and often requiring that the state court choose between two conflicting accounts of the events to decide which is truthful. Thus, the state court findings that Hooks received and understood his *Miranda* warnings must be pre-

---

1. Section 2254(d) provides:
   (d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for a writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless ...
   (8) ... that part of the record of the State court proceeding in which the determination

   of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record....

   Unless one of the exceptions specified by the statute pertains, the burden is upon the habeas petitioner to show by convincing evidence that the state court's factual finding was erroneous. *Id.*

sumed correct if fairly supported by the record.

■ However, this Court concluded in *Patterson v. Cuyler*, 729 F.2d 925, 930, 932 (3d Cir.1984), that the voluntariness of a waiver of *Miranda* rights is a mixed question of law and fact. While the holding in that case that the issue was nonetheless subject to the § 2254(d) presumption has been overturned by subsequent Supreme Court decisions, *see Holland, supra*, 777 F.2d 150, 153 n. 1, we reaffirm its conclusion that the voluntariness of a defendant's waiver of *Miranda* rights is a mixed question of law and fact, subject to plenary review by federal habeas courts.

■ Applying these standards of review, we conclude that the Delaware courts' factual findings that Hooks was informed of and fully understood his *Miranda* rights are supported by the record. Indeed, Hooks admitted at his suppression hearing that he was read the *Miranda* warnings. *See* Voir Dire Examination of Hooks at 70–71. Furthermore, the trial judge questioned Hooks regarding his level of education and his employment background, *id.* at 66, and implicitly found that Hooks was capable of understanding the warnings read to him by the officer, app. at 224. It is true that Hooks' responses to questioning regarding whether he understood his rights are, on the face of the record, ambiguous. Nonetheless, the trial judge, who had the opportunity to observe the petitioner's demeanor and listen to his testimony, had "no doubt in [his] mind that [Hooks] understood" his rights. *Id.* What is more, the Delaware Supreme Court affirmed the trial court's ruling that Hooks had validly waived his *Miranda* rights, stating that "there was more than ample evidence of defendant's awareness and understanding of his rights ...." *Hooks*, 416 A.2d at 200.[2] Thus, the only issue remaining is the mixed question whether, after being informed of his right to remain silent, Hooks

voluntarily chose to forgo that right when he responded to questioning.

■ At the hearing on Hooks' motion to suppress his statements. Hooks testified that his decision to respond to interrogation was not voluntary. He claimed that the police officer made menacing gestures toward him and told him that he was going to "be hung" if he did not answer the officer's questions. However, the officer denied having threatened Hooks verbally or otherwise. After hearing the testimony of both Hooks and the police officer, the trial court denied Hooks' motion to suppress, thereby implicitly rejecting his claim that his statements had been coerced. As in *Lonberger*, the denial of Hooks' motion to suppress "was tantamount to an express finding against the credibility of the defendant," 459 U.S. at 433, 103 S.Ct. at 850, and to an acceptance of the interrogating officer's testimony regarding what took place during interrogation. We must presume that this finding on a subsidiary factual question is correct, as it is supported by the record. *See Miller*, — U.S. at —, 106 S.Ct. at —; *Lonberger*, 459 U.S. at 431–32, 103 S.Ct. at 849–50.

■ Accepting the state court's finding as to this subsidiary historical fact, we conclude that Hooks voluntarily responded to questioning. Because the state courts found that Hooks was informed of and understood his *Miranda* rights and that he was subjected to no pressure to respond to questioning, it follows that Hooks knowingly and intelligently waived his rights. As the Supreme Court stated in *Elstad*, "[t]he warning conveys the relevant information and thereafter the suspect's choice whether to exercise his privilege to remain silent should ordinarily be viewed as an 'act of free will.'" — U.S. —, —, 105 S.Ct. 1285, 1294, 84 L.Ed.2d 222 (1985) (quoting *Wong Sun v. United States*, 371 U.S. 471, 486, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963)). On the facts presented here, Hooks' deci-

---

**2.** We are required to accord to the factual determinations of state appellate courts the same "high measure of deference" owed to the findings of state trial courts. *Sumner v. Mata*, 455

U.S. 591, 598, 102 S.Ct. 1303, 1307, 71 L.Ed.2d 480 (1982); *see Sumner*, 449 U.S. at 547, 101 S.Ct. at 769.

sion to answer the police officer's questions must be viewed as a deliberate and knowing choice not to remain silent. Consequently, we conclude that Hooks validly waived his *Miranda* rights and that his statements were properly admitted against him at trial.

■ The district court, while agreeing that the record supported the state courts' findings that Hooks received and understood his *Miranda* rights and their conclusion that he spoke voluntarily, nonetheless held that the state courts had erroneously concluded that Hooks validly waived his rights. *United States ex rel. Abubake v. Redman,* 521 F.Supp. at 977. It stated that the record contained insufficient evidence to support a determination that Hooks knowingly and intelligently waived his right to remain silent. The district judge based this determination upon his belief that a valid waiver could not occur unless Hooks understood the consequences of waiving his *Miranda* rights. *Id.*

However, the Supreme Court has never held that a knowing and intelligent waiver is impossible where a defendant is ignorant of the full consequences of the decision. *Elstad,* —— U.S. at ——, 105 S.Ct. at 1296; *cf. California v. Beheler,* 463 U.S. 1121, 1125 n. 3, 103 S.Ct. 3517, 3520 n. 3, 77 L.Ed.2d 1275 (1983); *McMann v. Richardson,* 397 U.S. 759, 769, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763 (1970). Indeed, since the district court's decision, the Supreme Court has made it clear that no such condition must be met in order for a waiver of *Miranda* rights to be valid. As it stated in *Elstad:* "[W]e have not held that the *sine qua non* for a knowing and voluntary waiver of the right to remain silent is a full and complete appreciation of all of the consequences flowing from the nature and quality of the evidence in the case." —— U.S. at ——, 105 S.Ct. at 1296. The district court's conclusion that Hooks did not validly waive his *Miranda* rights was thus

reached under a misunderstanding of the governing legal standard, and was erroneous.

### III.

The state courts' factual findings in this case are fairly supported by the record as a whole and, analyzing them under the correct legal standards, we conclude that petitioner validly waived his *Miranda* rights. Accordingly, the order of the district court denying petitioner's request for habeas corpus relief will be affirmed.

GIBBONS, Circuit Judge, dissenting:

The district court held that the State of Delaware did not carry its burden of establishing a valid waiver by petitioner Ahmad of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *United States ex rel. Ahmad v. Redman,* 599 F.Supp. 802, 804 (D.Del. 1984). That court nevertheless denied habeas corpus relief on the ground that the admission of an involuntary statement by Ahmad, obtained in the absence of a valid waiver of *Miranda* rights, was harmless beyond a reasonable doubt. *Id.* at 806. This appeal followed.

The majority quite properly does not rely on the harmless error ground for denying habeas corpus relief. Such reliance would be misplaced because the prosecutor, in his closing argument, relied heavily upon Ahmad's incriminating statement as evidence of his involvement in the robbery and therefore of his guilt. Instead, the majority holds that the district court erred in concluding that the state had failed to establish a voluntary waiver of *Miranda* rights. I respectfully disagree.

My difference with the majority is not over the analytical framework for our review of the district court's conclusion. The issue of voluntariness is one on which the district court, and this court, must make an independent judgment.[1] Like the district

---

1. Thus it is implicit in the majority's analysis that in light of *Miller v. Fenton,* —— U.S. ——, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985), and *Holland v. Attorney General,* 777 F.2d 150, 153 n. 1. (3d

Cir.1985), the interpretation of 28 U.S.C. § 2254(d) (1982) in *Patterson v. Cuyler,* 729 F.2d 925 (3d Cir.1984), is no longer authoritative.

court, I conclude that the Delaware court record fails to establish a voluntary waiver. Nowhere in that record is it established that Ahmad ever conveyed to the police the information that he understood his *Miranda* rights and intended not to exercise them. In the state suppression hearing Ahmad testified that the interrogating officer, Detective Corrigan, had threatened to hang him. Thereafter with respect to waiver the testimony is as follows:

Q. Now, when Detective Corrigan came in, did he advise you of your rights?

A. Yes, he did.

Q. How did he advise you of your rights?

A. He said, "You don't have to say anything unless you have an attorney."

Q. What else did he say?

A. The other words I can't—I'm—He run down it.

Q. He run down?

A. The law to me.

Q. Yes. And what did you answer every time he gave you one of these?

A. As-salaam-alaikum.

Q. What do you mean by that?

A. Means peace be upon you.

Q. Okay. Does it mean "yes"?

A. Peace be upon you.

Q. Does it mean "yes"?

A. No, sir.

Q. But there's no question that you didn't understand what he was saying?

A. Yes, sir.

Q. And there's no question that you understood that you didn't have to say a thing if you didn't want to?

A. No.

Transcript at 70–71. It is not apparent that Ahmad actually understood his *Miranda* rights, since the answers to the last two questions, ambiguously phrased as double negatives, appear to be inconsistent. I am willing to accept the state's finding that Ahmad was given adequate *Miranda* warnings. The state also had to establish that he knowingly waived those rights.

A waiver can sometimes be inferred from the suspect's behavior following *Miranda* warnings. The Supreme Court has, however, admonished,

As was unequivocally said in *Miranda*, mere silence is not enough. That does not mean that the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may never support a conclusion that a defendant has waived his rights. The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated.

*North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979) (footnote omitted). Ahmad never acknowledged to the interrogator that he understood and waived those rights. His response of "as-salaam-alaikum" is no more helpful to an assessment of either his understanding or of waiver than his complete silence would have been. "[A] valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained." *Miranda*, 384 U.S. at 475, 86 S.Ct. at 1628.

The equivocal response "as-salaam-alaikum" is quite different from the oral acknowledgment that the suspect understood her rights, followed by a willingness to answer questions. Thus the facts of this case are distinguishable from the situation dealt with in *United States v. Velasquez*, 626 F.2d 314, 319–20 (3d Cir.1980). In *Velasquez* the government established that before the suspect answered questions she unequivocally acknowledged that she understood her rights. The district court fully appreciated the difference between the record in *Velasquez* and that before us. *See United States ex rel. Ahmad*, 599 F.Supp. at 804. Furthermore, the Supreme Court has stated that

waivers of counsel must not only be voluntary, but must also constitute a know-

ing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case "upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

*Edwards v. Arizona,* 451 U.S. 477, 482, 101 S.Ct. 1880, 1883, 68 L.Ed.2d 378 (1981) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). The response "as-salaam-alaikum" does not satisfy the prosecutor's heavy burden of establishing a knowing and intelligent relinquishment of Ahmad's *Miranda* rights.

Thus I would reverse the judgment dismissing the writ of habeas corpus and remand with a direction that Ahmad should be released unless within a reasonable time Delaware affords him a new trial.