Stano PERRI, Petitioner-Appellant,

v.

DIRECTOR, DEPARTMENT OF COR-RECTIONS, STATE OF ILLINOIS, Respondent-Appellee.

No. 85–2854.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 20, 1987.
Decided April 29, 1987.

James H. Reddy, Public Defender of Cook County, Chicago, Ill., for petitioner-appellant.

James E. Fitzgerald, Asst. Atty. Gen., Chicago, Ill., for respondent-appellee.

Before COFFEY, FLAUM, and EASTERBROOK, Circuit Judges.

FLAUM, Circuit Judge.

Stano Perri was convicted of murdering his wife, Adelina. After exhausting his state remedies, he filed suit seeking a writ of habeas corpus in federal district court. Perri alleged that he did not knowingly and intelligently waive his *Miranda* rights, and that his confession was not voluntary. He asserted that, as a result, the admission of his confession into the trial violated his Fifth and Sixth Amendment rights. We conclude that Perri's confession was knowing and intelligent, and voluntary, and accordingly affirm the denial of his habeas petition.

## I.

### A.

Stano Perri was born in Italy. Perri completed five years of school, but never received formal training in the English language. In 1974, Perri decided to move to Elmwood Park, Illinois. There he landed a construction job. On the job, and at home, he spoke Italian.

In October of 1977, Perri returned to Italy to get married. He and his wife Adelina returned to Elmwood Park in 1978. They soon began to experience marital problems. This was confirmed to Perri on the night of July 17, 1978, when he came home to find his wife alone, and partially, unclothed, with the apartment manager. A domestic quarrel ensued, and the Elmwood police were called in.

About one month later, on August 18, 1978, Perri told his wife that he would like her to move out. She refused and admitted to having an affair with the apartment manager. A violent argument followed and later that evening Adelina was found dead. She had been beaten, and then strangled to death.

Perri was arrested for Adelina's murder. At the time of his arrest, the police gave Perri his *Miranda* warnings. The record reflects that the assistant state's attorney first gave each warning in English. The Elmwood Park chief of police then translated each warning into Italian. The chief of police had no formal training in Italian; he had learned the language from his parents (who spoke a different dialect than Perri). Perri responded in Italian to the translation of each warning. After each warning, the assistant state's attorney asked Perri in English "if he understood." Perri responded in English that he did.

The trial court admitted Perri's confession into evidence, and the jury found him guilty of murder. Perri appealed to the Illinois Appellate Court, which affirmed his conviction. The Illinois Supreme Court denied review.

### B.

Perri filed a habeas corpus petition in the district court pursuant to 28 U.S.C. § 2254 (1982). In the district court, Perri argued that the Elmwood Park chief of police was not competent to translate the *Miranda* warnings, because the chief was not "fluent" in Italian and spoke a different dialect than Perri. As a result, Perri asserted that his confession was not knowing and intelligently made, and therefore, was not voluntary. Perri argued, therefore, that the admission of his confession at trial violated his Fifth and Sixth Amendment rights.

The district court found that Perri's confession was voluntary. The district court also held that Perri understood his rights and knowingly and intelligently waived

them based upon the fact that the state trial judge found that Perri made his confession voluntarily. The district court believed that determinations by state courts, including a finding of voluntariness, must be presumed to be correct in federal habeas actions.[1] Section 2254(d) of title 28 provides that in habeas proceedings, the federal courts are to presume state court factual findings are correct, if these findings are made after a hearing on the merits, and are fairly supported by the record. *See generally Wainwright v. Witt,* 469 U.S. 412, 426–30, 105 S.Ct. 844, 853–55, 83 L.Ed.2d 841 (1985); *United States ex rel. Kosik v. Napoli,* 814 F.2d 1151 (7th Cir.1987); *United States ex rel. Smith v. Fairman,* 769 F.2d 386, 393–95 (7th Cir.1985).[2]

## II.

### A.

▮ On appeal, Perri essentially argues that his English was poor, his education was minimal, and that the warnings were inadequately translated. Based upon all of these factors, Perri asks this court to conclude that he did not understand his warnings, and thus, did not knowingly waive his rights.

As an initial matter, we must determine the appropriate standard of review that governs our evaluation of a state court's finding of a knowing and intelligent waiver

of *Miranda* rights. In *Miller v. Fenton,* 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985), a case concerned with a claim of a coerced confession, which involves a uniquely federal interest, the Supreme Court held that the ultimate question of whether a confession is voluntary is a question of law subject to plenary federal review. *Miller* did make clear, however, that the presumption of correctness in 28 U.S.C. § 2254(d) applies to the "subsidiary" findings of fact. *See id.* at 453; *see also Wainwright v. Witt,* 469 U.S. 412, 427–28, 105 S.Ct. 844, 854, 83 L.Ed.2d 841 (1985) (collecting recent Supreme Court cases).

*Miller* does not, however, control our standard of review in this case. In *Miller,* the Court expressly left open the question we are faced with now: "whether federal habeas courts must accord the statutory presumption of correctness to state-court findings concerning the validity of a waiver," *Miller,* 106 S.Ct. at 449 n. 3. *But see Brewer v. Williams,* 430 U.S. 387, 397 n. 4 & 403–04, 97 S.Ct. 1232, 1239 n. 4 & 1242, 51 L.Ed.2d 424 (1977). *See generally* Robbins, *Whither (or Wither) Habeas Corpus?: Observations on the Supreme Court's 1985 Term,* 111 F.R.D. 265, 272–77 (1986). In *Brewer v. Williams, supra,* the Court stated that whether a defendant had waived his or her constitutional rights was a federal question. *Brewer,* 430 U.S. at 403–04, 97 S.Ct. at 1242. However, the

---

1. In this case the district court gave "deference" to the state court's finding of voluntariness. That, of course, was incorrect in light of *Miller v. Fenton,* 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). We note, however, that *Miller* was decided after the district court issued its opinion.

2. The district court held that even if Perri's confession was not voluntary, his trial testimony corroborating his confession rendered any error in admitting the confession harmless. The district court reasoned that *Harrison v. United States,* 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968), which held that in some situations trial testimony can be the fruit of an illegally admitted confession, and therefore inadmissible, was no longer good law.

   In *Harrison,* the defense counsel stated during opening argument that the defendant would not take the stand. The defendant's illegally-obtained confessions were then admitted at trial, which forced Harrison to testify in his own

defense. The Court reversed Harrison's conviction, believing he testified to "overcome the impact of confessions illegally obtained and hence improperly introduced." *Id.* at 223, 88 S.Ct. at 2010. The district court believed that *Harrison* had been overruled *sub silentio* by recent "fruit of the poisonous tree" Supreme Court cases such as *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985) and *Michigan v. Tucker,* 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974).

   Because of our disposition of this case, we need not decide whether the district court reached the correct result concerning *Harrison.* Furthermore, the district court did not have to reach the *Harrison* question. We note, however, that the case before us is readily distinguishable from *Harrison* because here, unlike *Harrison,* there is no evidence Perri was compelled to take the stand to refute his admitted confession.

Court in *Miller* has, without citing *Brewer*, called this determination into question. *Miller*, 106 S.Ct. at 449 n. 3.

*Miller* has given us an opportunity to re-evaluate our previous decisions which concluded that § 2254(d) did not apply to the issue of whether a waiver was knowing and intelligent. *See, e.g., United States ex rel. Tonaldi v. Elrod,* 716 F.2d 431, 437 (7th Cir.1983). We believe that in light of *Miller*[3] and the fact that the Court has implicitly questioned *Brewer*,[4] the determination of knowing and intelligent waiver is a factual inquiry. We therefore conclude that findings of a state court on questions of whether a defendant understood his or her rights and knowingly and intelligently waived them are entitled to the § 2254(d) presumption. *Accord Ahmad v. Redman,* 782 F.2d 409, 412, 414 (3rd Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 119, 93 L.Ed.2d 66 (1986). *But see Fernandez v. Rodriguez,* 761 F.2d 558, 561–62 (10th Cir. 1985).

The determination of whether a defendant understood his or her rights, and knowingly waived them, is factual for several reasons. Whether a waiver was knowing and intelligent involves basic or primary facts—" 'in the sense of a recital of external events and the credibility of their narrators,' " *Townsend v. Sain,* 372 U.S. 293, 309 n. 6, 83 S.Ct. 745, 755 n. 6, 9 L.Ed.2d 770 (1963) (*quoting Brown v. Allen,* 344 U.S. 443, 506, 73 S.Ct. 397, 446, 97 L.Ed. 469 (1953)). On the other hand, mixed questions of law and fact "involve the application of legal principles to the historical facts of [the] case," *Cuyler v. Sullivan,* 446 U.S. 335, 342, 100 S.Ct. 1708, 1715, 64 L.Ed.2d 333 (1980). We believe that the question of knowing and intelligent waiver does not require the application of legal principles. Once a state court finds that a defendant understood each *Miranda* right, then the court has made the necessary subsidiary factual determinations to the conclusion that the defendant has made a knowing and intelligent waiver. Therefore, because the final conclusion of whether a waiver was intelligent is disposed of by a state court's ascertainment of subsidiary factual determinations, we conclude that it would be incongruous not to give this determination deference under 28 U.S.C. § 2254(d).

Moreover, whether a waiver is intelligently made is a factual question, because whether an individual understood his or her rights is an inquiry into his or her state of mind. *See Miller,* 106 S.Ct. at 451. This inquiry will often require an assessment of the credibility of the defendant and the government's witnesses. The resolution of conflicting stories is appropriately made by the court of initial impression and not a federal court on collateral review.[5] *See*

---

**3.** The trend of recent Supreme Court cases has been to accord particular determinations by state courts the presumption of correctness under § 2254(d). *See Miller,* 106 S.Ct. at 454 (Rehnquist, J., dissenting) (*citing Sumner v. Mata (Sumner I),* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *Sumner v. Mata (Sumner II),* 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982) (*per curiam*); *Marshall v. Lonberger,* 459 U.S. 422, 431–37, 103 S.Ct. 843, 849–52, 74 L.Ed.2d 646 (1983); *Maggio v. Fulford,* 462 U.S. 111, 103 S.Ct. 2261, 76 L.Ed.2d 794 (1983) (*per curiam*); *Rushen v. Spain,* 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983) (*per curiam*); *Patton v. Yount,* 467 U.S. 1025, 1036–40, 104 S.Ct. 2885, 2891–93, 81 L.Ed.2d 847 (1984); and *Wainwright v. Witt,* 469 U.S. 412, 426–30, 105 S.Ct. 844, 853–55, 83 L.Ed.2d 841 (1985)).

**4.** We have recently recognized that:

Ordinarily a lower court has no authority to reject a doctrine developed by a higher one.... If, however, events subsequent to the last decision by the higher court approving the doctrine—especially later decisions by that court and statutory changes—make it almost certain that the higher court would repudiate the doctrine if given a chance to do so, the lower court is not required to adhere to the doctrine.

*Olson v. Paine, Webber, Jackson & Curtis, Inc.,* 806 F.2d 731, 734 (7th Cir.1986).

**5.** The *Miller* Court stated:

[O]ther considerations often suggest the appropriateness of resolving close questions concerning the status of an issue as one of "law" or "fact" in favor of extending deference to the trial court. When, for example, the issue involves the credibility of witnesses and therefore turns largely on an evaluation of demeanor, there are compelling and familiar justifications for leaving the process of applying law to fact to the trial court and according its determinations presumptive weight.

*Miller,* 106 S.Ct. at 452.

*Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 851, 74 L.Ed.2d 646 (1983).

Our result is also consistent with the procedure that circuit courts use in a federal criminal case on direct appeal, in which the question of whether a defendant has waived his or her *Miranda* rights is treated as a question of fact. *See, e.g., United States v. McClure*, 786 F.2d 1286, 1289–90 (5th Cir.1986); *United States v. Gonzales*, 749 F.2d 1329, 1335–36 (9th Cir.1984); *cf. Gorham v. Franzen*, 760 F.2d 786, 790 (7th Cir.), *cert. denied,* __ U.S. __, 106 S.Ct. 255, 88 L.Ed.2d 262 (1985) (district court's finding of no valid waiver of *Miranda* rights was subject to the clearly erroneous standard). Both the district court in a federal criminal case and a state trial court have the opportunity to assess the credibility of witnesses. We believe that it would be anomalous to accord a state trial court's factual findings less weight than the findings of a federal trial court.

We apply our conclusion, that the determination of knowing and intelligent waiver is a factual issue, to a case where a defendant is read his or her *Miranda* rights, waives them, and then confesses. Of course, once a defendant invokes his or her rights, and certain prophylactic rules are implicated, *see, e.g., Edwards v. Arizona*, 451 U.S. 477, 484, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981), then a determination of whether a state court properly applied these legal rules is not accorded the § 2254(d) presumption. *See, e.g., United States ex rel. Espinoza v. Fairman*, 813 F.2d 117 (7th Cir.1987).

### B.

■ We must next review the record to determine what findings were made by the state trial court. We must determine if the state court found that Perri understood his rights, and knowingly and intelligently waived them. However, we must keep in mind that the question of whether a waiver is knowing and intelligent is a distinct inquiry from the voluntariness issue. Once we determine whether the state court found a knowing and intelligent waiver that is supported by the record, then the only issue for this court to decide is, based on the totality of the circumstances, whether Perri voluntarily confessed. The focus of the voluntariness inquiry is whether there is any activity by the state that coerced the defendant to confess. *See Colorado v. Connelly,* __ U.S. __, 107 S.Ct. 515, 520, 93 L.Ed.2d 473 (1986).

In this case the state court found that Perri understood the *questions* he was asked (e.g., "Do you understand that you have the right to remain silent?"). The state court made no finding as to whether Perri understood the *rights* and knowingly and intelligently waived them. Moreover, the state court found that Perri "clearly understood what the questions were and showed a voluntariness on his part to cooperate." The state court's finding that Perri understood the *questions* was sufficient to find a valid waiver, because Perri did not need a full appreciation of all the consequences of a waiver for it to be knowing and intelligent. *Connecticut v. Barrett,* __ U.S. __, 107 S.Ct. 828, 833, 93 L.Ed.2d 920 (1987) (*citing Colorado v. Spring,* __ U.S. __, 107 S.Ct. 851, 857, 93 L.Ed.2d 954 (1987) and *Oregon v. Elstad,* 470 U.S. 298, 316, 105 S.Ct. 1285, 1297, 84 L.Ed.2d 222 (1985)).

The failure of the state court to expressly find that Perri's waiver of his rights was knowing and intelligent is not fatal. The testimony in the record is that Perri was given his *Miranda* warnings. After each warning, the defendant responded that he understood the right. Moreover, after each warning the assistant state's attorney testified that he asked Perri if he understood. Perri again responded that he did. The defendant's words and actions clearly support the conclusion that he waived his rights. We believe that a determination that Perri understood his rights is plain from the context of the record and implicit in the state court findings. *See United States ex rel. Jones v. DeRobertis,* 766 F.2d 270, 272–73 (7th Cir.1985), *cert. denied,* __ U.S. __, 106 S.Ct. 1280, 89 L.Ed.2d 587 (1986). The state, therefore, has met its great burden and has proved that the defendant waived his rights. *See*

*North Carolina v. Butler,* 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979).

Perri contends, however, that there was a language barrier that prevented his confession from being knowing and intelligent. He argues that the warnings were insufficient because they were given in a different dialect of Italian than his own. In light of the testimony in the record that Perri was asked in English if he understood his rights and responded in English that he did, we believe that it is implicit in the state court's determination that the warnings were adequately translated and that he intelligently waived them. *Compare United States v. Abou-Saada,* 785 F.2d 1, 10 (1st Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 3283, 91 L.Ed.2d 572 (1986) (The fact that defendant, a foreigner, had lived in the United States for 16 years, and answered questions in English before they were translated, supported a finding that he understood English and his *Miranda* warnings sufficiently to knowingly waive his rights.).

Finally, based on the totality of the circumstances,[6] and relying on the state court's subsidiary factual findings, *see Matusiak v. Kelly,* 786 F.2d 536, 543 (2d Cir.), *cert. dismissed,* — U.S. —, 107 S.Ct. 248, 93 L.Ed.2d 172 (1986), we conclude that Perri's confession was voluntary.

AFFIRMED.

---

**6.** The Supreme Court in *Miller* stated that the relevant inquiry is whether "under the totality of the circumstances, the confession was obtained in a manner consistent with the Constitu-tion." *Miller,* 106 S.Ct. at 453. The Court believed that a "state-court judge [was] not in an appreciably better position than the federal habeas court to make that determination." *Id.*