**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2983
_____

UNITED STATES OF AMERICA

v.

MARC ANTHONY
a/k/a Nasir Johnson
a/k/a Marc Anthony Minott,
                                        Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:22-cr-00164-001)
District Judge: Honorable Gene E.K. Pratter[*]
_____

Submitted under Third Circuit LAR 34.1(a)
November 3, 2025

Before: KRAUSE, PHIPPS, and ROTH, *Circuit Judges*.

(Filed: November 6, 2025)

_____

OPINION[**]
_____

---

[*] Judge Pratter, who passed away on May 17, 2024, after serving nearly twenty years on the District Court, authored the opinion under review. Judge Marston is presently assigned to this case.
[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

KRAUSE, *Circuit Judge*.

Appellant Marc Anthony appeals the District Court's denial of his motion to suppress a statement he made to detectives after waiving his *Miranda* rights. Because the District Court properly concluded that Anthony's *Miranda* waiver was voluntary, knowing, and intelligent, we will affirm.

## I. DISCUSSION[1]

Anthony challenges the District Court's denial of his motion to suppress on the ground that the totality of the circumstances—including his learning disorders and autism spectrum disorder (ASD) diagnoses, experience with the juvenile justice system, and education levels—show his *Miranda* waiver did not meet the requirements that it be "voluntary, knowing, and intelligent considering the totality of the circumstances." *United States v. Rought*, 11 F.4th 178, 187 (3d Cir. 2021). Keeping in mind that the Government bears "the burden to establish waiver by a preponderance of the evidence," *Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010), we address the voluntariness of Anthony's waiver before turning to whether it was knowing and intelligent.[2]

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231, and this Court has jurisdiction under 28 U.S.C. § 1291. This Court reviews the denial of a motion to suppress "for clear error as to the facts that the District Court found and exercise[s] plenary review over the application of law to those facts." *United States v. Rought*, 11 F.4th 178, 185-86 (3d Cir. 2021).

[2] Although Anthony generally waived his right to appeal under his plea agreement, the agreement preserved his right to argue in this Court that his *Miranda* waiver was not "knowing and intelligent." App. 564. But because we have often used that phrase as shorthand for "knowing, intelligent, and voluntary," we construe his claim to also challenge voluntariness. *See Rought*, 11 F.4th at 186, 192-93 (conducting a voluntariness assessment despite noting that only the defendant's "knowing and intelligent" argument

## A. Anthony Voluntarily Waived His *Miranda* Rights.

A waiver of *Miranda* rights is voluntary if "it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Rought*, 11 F.4th at 187 (quoting *Colorado v. Spring*, 479 U.S. 564, 573 (1987)). To assess voluntariness, courts must consider both "the characteristics of the accused" and "the details of the interrogation." *Lam v. Kelchner*, 304 F.3d 256, 264 (3d Cir. 2002) (quoting *Dickerson v. United States*, 530 U.S. 428, 434 (2000)). The former includes "the defendant's maturity, education, physical condition, and mental health," *id.*, and prior dealings with the criminal justice system, *see United States v. Jacobs*, 431 F.3d 99, 108 (3d Cir. 2005). The latter encompasses things like "the length of the interrogation, its location, [and] its continuity." *Lam*, 304 F.3d at 264. Both considerations are intended to shed light on "the crucial element of police coercion," *id.*, which is a "necessary predicate" to a finding of involuntariness, *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). A defendant's mental impairment can enhance his "susceptibility to police coercion," and thus can be a "significant factor" in the voluntariness inquiry, but the "defendant's mental condition, by itself and apart from its relation to official coercion, should [n]ever dispose of" this issue. *Id.* at 164-65.

---

was raised explicitly); *Ahmad v. Redman*, 782 F.2d 409, 411-13 (3d Cir. 1986) (concluding that the defendant "knowingly and intelligently waived his rights under *Miranda*" after conducting a voluntariness analysis). To the extent that the United States Attorney's Office treats "knowing and intelligent" to also encompass voluntariness when describing plea agreements or, as here, carveouts to appellate waivers in its standard plea agreements, it may wish to revisit that phrasing for the sake of clarity.

Here, there is no evidence of coercive police activity that could have overborne Anthony's will. *See Dickerson*, 530 U.S. at 434. True, the detectives relayed false information—i.e., that his housemate had confessed to the carjacking and implicated Anthony—but the Supreme Court "has refused to find that a defendant who confesses, after being falsely told that his codefendant has turned State's evidence, does so involuntarily." *Oregon v. Elstad*, 470 U.S. 298, 317 (1985). And other circumstances support the conclusion that Anthony acted voluntarily: the interrogation lasted just forty minutes with only two officers present; Anthony was responsive to questioning throughout the interrogation; his education records show he had progressed through the eleventh grade with periods of academic success; and his juvenile justice records reflect his familiarity with the criminal justice system from prior encounters.

**B.      Anthony's *Miranda* Waiver was Knowing and Intelligent.**

A waiver of *Miranda* rights is knowing and intelligent if it is "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Rought*, 11 F.4th at 187 (quoting *Spring*, 479 U.S. at 573). We consider the totality of the surrounding circumstances, including a defendant's "age, experience, education, background, and intelligence." *Fare v. Michael C.*, 442 U.S. 707, 725 (1979).

Anthony argues that his *Miranda* waiver was not knowing or intelligent because his comprehension was impaired by his diagnosed learning disorders and ASD. As evidence, he points to the testimony of his expert witness who opined that Anthony was not competent to waive his *Miranda* rights because he suffers from ASD, functions at a

4

low intellectual and verbal reasoning capacity, and performs at the academic level of a fifth- to seventh-grade child. But the relevant question is not whether the defendant "know[s] and understand[s] every possible consequence of a waiver of the Fifth Amendment privilege," but rather whether he "knows that he may choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time." *Spring*, 479 U.S. at 574.

The record reflects that Anthony had that knowledge. His own expert recognized that Anthony is at the high-functioning end of the autism spectrum; two prior clinical assessments had ruled out ASD diagnoses; Anthony performed well in certain academic environments; and he understood that the interrogation was an adversarial situation. In addition, the Government's expert witness opined that Anthony did not exhibit symptoms that would "interfere with [his] ability to listen to, comprehend, and respond appropriately to spoken language or to demonstrate an ability to accurately understand confidentiality warnings, or information provided to him about his legal rights in the context of a police interview," Answering Br. 4, and that ASD tends to manifest as "lack of comfort with social interaction," not as "a comprehension deficit," App. 323-24. And while Anthony's expert emphasized Anthony's academic struggles, the Government elicited on cross-examination that much of his poor performance could be explained by chronic absenteeism, daily marijuana usage, drinking a bottle of cognac a day, and abusive use of narcotics such as prescription opioids. App. 207-11.

Other facts supporting a finding of knowing and intelligent waiver are that Anthony is a native English-speaker, completed the eleventh grade, is an adult, signed a

5

written waiver form, had prior arrests, albeit as a juvenile, and had previously undergone sentencing proceedings. *See Fare*, 442 U.S. at 725-26 (upholding a sixteen-year-old's confession largely because he had several prior arrests and served time at a youth camp); *Rought*, 11 F.4th at 193 (upholding a waiver because the defendant "was read his *Miranda* rights, signed a form acknowledging that he understood them, [] consented to questioning[, and] had prior experience with the criminal justice system").[3]

Nor does Anthony's poor performance on the *Miranda* Rights Comprehension Instruments (MRCI) alter this analysis. Contrary to Anthony's framing, the District Court considered Anthony's MRCI results but deemed them of "little to no bearing" on its analysis of his *Miranda* waiver. App. 553. The District Court noted "several issues with the MRCI that seriously circumscribe its value," including that (1) its results must be extrapolated to evaluate the subject's understanding at the time of interrogation rather than the time of testing;[4] (2) it does not provide an absolute pass or fail outcome; and (3) several words on the vocabulary portion of the test were not used on the waiver form

---

[3] *See also Smith v. Mullin*, 379 F.3d 919 (10th Cir. 2004) (upholding waiver of a defendant with cognitive abilities similar to that of a twelve-year-old because the defendant's poor performance on the MRCI test took place years after his interrogation and he had prior experience with the criminal justice system); *Hall v. Thomas*, 611 F.3d 1259, 1288-89 (11th Cir. 2010) (upholding fifteen-year-old's waiver where there was no evidence on audiotape that he was confused or misunderstood the seriousness of the interrogation or the questions he was being asked, he was not interrogated for a long period of time, and there was no evidence of police coercion).

[4] The District Court misstated the time between his interrogation and MRCI testing: it was eleven months, not "several years." App. 553. But that error does not undermine the District Court's reasoning. Anthony's own expert recognized that the MRCI evaluates the test taker's current understanding of their *Miranda* rights and is not "accurate or reliable as to what happened 11 months earlier." App. 237.

6

signed by Anthony. App. 553. We share these concerns and see no error in the District Court's decision to discount that evidence.

\*　　\*　　\*

Considering the totality of the circumstances, the Government proved by a preponderance of the evidence that Anthony's *Miranda* waiver was voluntary, knowing, and intelligent. And, because the detectives did not take advantage of a known or apparent mental disability, affirming the denial of Anthony's suppression motion is consistent with the original purpose underlying *Miranda*; to "reduce the likelihood that the suspects would fall victim to constitutionally impermissible practices of police interrogation." *New York v. Quarles*, 467 U.S. 649, 656 (1984).

## II.　CONCLUSION

For the foregoing reasons, we will affirm.