**Alva Frank TAYLOR, Petitioner,**

**v.**

**COMMONWEALTH OF PENNSYLVANIA and Leroy Zimmerman, Attorney General, Defendants.**

Civ. No. 87–1522.

United States District Court, M.D. Pennsylvania.

May 12, 1988.

**494**

Gerald P. Deady, Wilkes–Barre, Pa., for Alva Frank Taylor.

Joseph C. Giebus, Asst. Dist. Atty., Wilkes–Barre, Pa., for Com. of Pa.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

Currently before the court is petitioner's petition for writ of habeas corpus, filed on October 30, 1987. For the reasons that follow, the court will deny petitioner's application for habeas relief.

## BACKGROUND

This action arises out of petitioner's conviction in the Luzerne County Court of Common Pleas of two counts of driving under the influence of alcohol and one count of leaving the scene of an accident involving death or injury. Petitioner was acquitted of two counts of homicide by motor vehicle while driving under the influence and two counts of homicide by motor vehicle. Following his conviction, petitioner was sentenced to one (1) year imprisonment.

The charges stemmed from appellant's involvement in two accidents occurring on March 4, 1985.[1] The first of these resulted in the deaths of two children who were struck by appellant's pick-up truck as he swerved out of the right lane onto the berm of the road where the children stood. Failing to stop, appellant proceeded approximately one and one-half (1½) miles farther, lost control of his vehicle, and crossed the center line, coming to a halt up an embankment on the opposite side of the road and facing in the direction from which he had come.

Appellant was arrested after police, who had been notified that a hit and run driver was at the scene of a second accident, noticed appellant's inebriated condition. He exhibited the classic physical symptoms of intoxication, bloodshot eyes, slurred speech, impaired coordination, and exuded a pronounced aroma of intoxicants.

Appellant was escorted to the local police station for booking, and then to the nearest breath-testing facility, where, after a delay of some two and one-half (2½) hours, analysis revealed his blood alcohol level to be .19.

Petitioner filed the present action on October 30, 1987. Respondents filed their response to the petition on December 23, 1987, and petitioner filed a reply brief on December 29, 1987. *See* documents 12 and

---

1. These facts are taken verbatim from *Commonwealth v. Taylor,* No. 00876 Phila.1985, slip op. at pp. 1–2 (Pa.Super. Dec. 4, 1986).

15 of record, respectively. The court ordered the lower court record on January 15, 1988, and, following a lengthy delay, that record was received on March 24, 1988. *See* documents 17 and 20 of record, respectively. The court has carefully examined that record in its entirety, and petitioner's habeas corpus petition is now ripe for disposition.[2]

## DISCUSSION

### I.

■ Defendant first claims that his sentence violates the due process clause of the Fourteenth Amendment to the United States Constitution and the double jeopardy clause. In essence, defendant contends that the trial judge impermissibly considered the deaths of the two children at the sentencing stage in imposing sentence. *See* document 1 of record, at p. 4. The court finds this argument to be meritless.

Petitioner was convicted of two separate offenses, driving under the influence of alcohol and leaving the scene of an accident involving death or injury. *See* 75 Pa. C.S. A. §§ 3731 and 3742, respectively. The former is a misdemeanor of the second degree with a maximum term of imprisonment of two years, *see* 75 Pa. C.S.A. § 3731(e)(1); 18 Pa.C.S.A. § 1104(2), and the latter is a misdemeanor of the first degree, with a maximum term of imprisonment of five years, if the victim suffers serious bodily injury or death. *See* 75 Pa. C.S.A. § 3742(b)(2); 18 Pa.C.S.A. § 1104(1). The sentencing guidelines in effect when petitioner was tried and convicted provided for a standard minimum range of 0–12 months for each offense. *See* 204 Pa.Admin. Code §§ 303.8(c)(3), 303.9(b).

In *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983), a case dealing with cumulative sentences imposed in a single trial, the court held that "the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." Here, petitioner received two consecutive 6–12 month sentences. *See* document 1 of record, Exhibit A (sentencing transcript), p. 12. These sentences are clearly within the ranges prescribed by Pennsylvania's General Assembly. Thus, the sentences do not violate the double jeopardy clause.

■ With regard to petitioner's due process claim, it is true that a criminal defendant must be afforded some degree of due process at a sentencing proceeding. *See Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948); *United States v. Palma*, 760 F.2d 475, 477 (3d Cir.1985). Nevertheless, the same degree of due process protection need not be afforded during the sentencing phase of a criminal proceeding as would be required at trial. *United States v. Palma*, 760 F.2d at 477; *United States v. Davis*, 710 F.2d 104, 106 (3d Cir. 1983), *cert. denied*, 464 U.S. 1001, 104 S.Ct. 505, 78 L.Ed.2d 695 (1983) (only minimal due process protection required at sentencing).

The court concludes that the trial court's actions in the present case did not violate petitioner's minimal due process rights. As stated previously, petitioner's sentence did not violate Pennsylvania's sentencing statute. *Cf. Hicks v. Oklahoma*, 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980); *Hill v. Estelle*, 653 F.2d 202, 204 (5th Cir. 1981), *cert. denied*, 454 U.S. 1036, 102 S.Ct. 577, 70 L.Ed.2d 481 (1981) (violation of state sentencing statute can in certain circumstances invoke the due process protections of the constitution). The deaths of the children directly figure into petitioner's sentence for leaving the scene of the accident according to Pennsylvania's statute. *See* 75 Pa.C.S.A. § 3742(b) (penalties). In addition, the sentencing judge has traditionally been permitted to conduct "an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Grayson*, 438

---

**2.** Following this court's denial of respondents' motion to dismiss by Order dated December 14, 1987, petitioner filed a motion for sanctions. *See* documents 13 and 14 of record. The court will deal with this motion following the discussion of the merits of petitioner's arguments. *See infra* at pp. 501–04.

U.S. 41, 50, 98 S.Ct. 2610, 2615, 57 L.Ed.2d 582 (1978) (taking into account a defendant's false testimony does not constitute punishment for the crime of perjury for which the defendant has not been tried or convicted by due process); *see also Commonwealth v. Lupatsky,* 341 Pa.Super. 338, 342, 491 A.2d 845, 847 (1985) (prior convictions excluded in computing prior record score may still be considered in fixing the penalty within the range of "mitigated" to "aggravated" at a particular step); *Commonwealth v. Holler,* 326 Pa. Super. 304, 309, 473 A.2d 1103, 1106 (1984) (court has broad discretion in sentencing that will not be disturbed absent abuse); *Commonwealth v. Weldon,* 320 Pa.Super. 102, 104–105, 466 A.2d 1082, 1084 (1983) (court is bound to examine a range of factors concerning the person and history of defendant, and the particular circumstances of the crime in fashioning a sentence). Finally, in addition to the deaths of the two children, the court relied on the presentence investigation report, the seriousness of the offenses, and the history, character, and condition of petitioner. This court finds no error.

## II.

■ Petitioner also claims that the admission into evidence of the results of the breathalyzer test given to petitioner on March 4, 1983 violates the *ex post facto* clause of the Constitution. *See* document 1 of record, at pp. 4–5. Petitioner frames his argument in the following fashion:

On January 15, 1983, rules and regulations governing the admissibility of breathalyzer tests in the Commonwealth of Pennsylvania were adopted. These regulations have been attached as Exhibit "B". Section 77.6(b)(2)(i) provided in relevant part that five accuracy tests must be performed in order to certify any machine as being accurate and specified the range which each of the five tests must fall within. The rules and regulations went on to provide that if any of the five tests fell outside of the range specified that the machine had to be removed from service and could not be used.

On March 19, 1983, fifteen days after the date of the accident and Defendant's arrest, the rules and regulations were amended so as to enlarge the range of permissible test results. A copy of these amended rules and regulations have been attached as Exhibit "C".

Each of the five accuracy tests performed on the machine used to test the Defendant's blood alcohol level fell outside of the range specified by the regulations adopted in January and in effect on the date of the defendant's arrest but were within the range specified in the regulations which were adopted after the Defendant's arrest. A Copy of the five test results is attached to this Petition as Exhibit "D". Over objection of the Defendant the court admitted the results of this breathalyzer into evidence.

It is the position of the defendant that the admission of these breath test results based on regulations which were not in existence at the time of the Defendant's arrest violates the ex post facto provision of the United States Constitution.

*See id.* For the reasons that follow, the court finds no violation of the *ex post facto* clause, and so this claim will also be rejected.

The *ex post facto* clause was included in the Constitution to assure that federal and state authorities were restrained from enacting arbitrary and vindictive legislation, and that legislative enactments give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed. *Miller v. Florida,* —— U.S. ——, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987). Thus, any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission; which aggravates a crime, or makes it greater than it was, when committed; or that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offense, in order to convict the offender, is prohibited as *ex post facto. Id.* 107 S.Ct. at 2450–2451; *Dobbert v. Florida,* 432 U.S. 282, 292, 97 S.Ct. 2290, 2297, 53 L.Ed.2d

344 (1977); *Beazell v. Ohio,* 269 U.S. 167, 169–170, 46 S.Ct. 68, 68–69, 70 L.Ed. 216 (1925).

Thus, to fall within the *ex post facto* prohibition, two critical elements must be present: (1) the law must be retrospective, that is, it must apply to events occurring before its enactment and it must change the legal consequence of acts completed before its effective date, *Miller v. Florida,* 107 S.Ct. at 2451; *Weaver v. Graham,* 450 U.S. 24, 29, 31, 101 S.Ct. 960, 964, 965, 67 L.Ed.2d 17 (1981); and (2) it must disadvantage the offender affected by it, that is, the law must be more onerous than the prior law. *Miller v. Florida,* 107 S.Ct. at 2451, 2452; *Weaver v. Graham,* 450 U.S. at 29, 101 S.Ct. at 964, 67 L.Ed.2d 17; *Dobbert v. Florida,* 432 U.S. at 294, 97 S.Ct. at 2299, 53 L.Ed.2d 344.[3] Here, the court finds present neither retrospectivity, as the term is defined in *Miller* and *Weaver,* nor disadvantage to the petitioner.

Petitioner challenges those portions of the breathalyzer regulations dealing with accuracy inspection testing. The January 15, 1983 regulations provided as follows:

(2) The breath testing device does not pass the accuracy inspection test and shall be removed from service if:

(i) one or more of the five tests yields a result less than .09% or greater than .10%; or

(ii) the average deviation derived by adding the absolute values of the differences between the results of the five tests and a constant value of .10% and dividing the total of these absolute values by 5 exceeds .005%.

(3) Example of accuracy inspection test:

| Simulator Solution | | Reading | | Difference (absolute value) |
|---|---|---|---|---|
| .100 | — | .099 | = | .001 |
| .100 | — | .104 | = | .004 |
| .100 | — | .098 | = | .002 |
| .100 | — | .101 | = | .001 |
| .100 | — | .102 | = | .002 |

$$\frac{.010}{5} = .002$$

Average deviation = .002 and .002 is less than .005 *so the breath test device passes the accuracy inspection test.*

*See* document 1 of record, Exhibit B, at p. 4 (emphasis added). On March 8, 1983, amendments were proposed to these regulations, which amendments became effective on March 10, 1983. In pertinent part, the amended regulations provide as follows:

(2) The breath testing device does not pass the accuracy test and shall be removed from service if:

(i) one or more of the five tests yields a result less than .090% or greater than .109%; or

(ii) the average deviation derived by adding the absolute values of the differences between the results of the five tests and a constant value of .10% and dividing the total of these absolute values by 5 exceeds .005%.

*See id.,* Exhibit C, at p. 2. The example of the accuracy inspection test that follows remains unchanged from that provided in the prior regulations. *See id.,* Exhibit C, at pp. 2–3.

The results of the five accuracy tests performed on the machine used to test petitioner's blood alcohol level are as follows:

| | TEST RESULTS | CONSTANT | ABSOLUTE DIFFERENCE |
|---|---|---|---|
| a. | .102% | .10% | .002% |
| b. | .104% | .10% | .004% |
| c. | .105% | .10% | .005% |
| d. | .105% | .10% | .005% |
| e. | .105% | .10% | .005% |
| | | Total | .021 |

$$\text{Average deviation} = \frac{\text{Total .021\%}}{5.0} = .004\%$$

*See id.,* Exhibit D. Petitioner argues that each of these five tests falls outside the range specified by the January regulations in effect on the date of petitioner's arrest,

---

**3.** "[E]ven if a law operates to the defendant's detriment, the ex post facto prohibition does not restrict 'legislative control of remedies and modes of procedure which do not affect matters of substance....' Hence, no ex post facto violation occurs if the change in the law is merely procedural and does 'not increase the punishment, nor change the ingredients of the offense or the ultimate facts necessary to establish guilt.'" *Miller v. Florida,* 107 S.Ct. at 2452–2453 (citations omitted).

and that the breathalyzer test could only be admitted by using the regulations that were adopted and effective only after petitioner's arrest. The court disagrees.

The January regulations state that a breath testing device will not pass the accuracy inspection test if one or more of the five tests yields a result of greater than .10%. Petitioner would argue that a result of .101% would therefore be unacceptable. As the example of the accuracy inspection test illustrates, however, any result less than .11% is acceptable (that is, not greater than .109%). In the example given under the January 15, 1983 regulations, three of the readings are .104, .101, and .102. Nevertheless, as the caption states, the breath test device passes the accuracy inspection test.

This conclusion is supported by the letter from the Secretaries of the Departments of Health and Transportation that accompanies the amended regulations. That letter provides as follows:

*The amendments are being published to clarify two areas of the interim regulations.* First, the definition of "simulator solution" is amended to make it clear that the simulator solution produces an air alcohol mixture that is designed to give a reading of .100% on the breath test equipment and that can be used to inspect or verify the accuracy of such equipment. *Second, § 77.6(b)(2)(i) is amended to clarify the lower and upper limits of test results that require removal of a breath testing device from service.*

*See* document 1 of record, Exhibit C, at p. 1. Thus, rather than making a substantive change in the regulations, the amendment merely clarifies that "greater than .10%" means less than .11%, or not greater than .109%.

■ Given that the court concludes that the amendments to the regulations effected no change whatsoever, the amended regulations could not have changed the legal consequences of acts completed before their effective date. Assuming *arguendo* that the regulations did effect some change, the court finds any such change to

be merely procedural and thus not prohibited by the *ex post facto* clause. *See Dobbert v. Florida,* 432 U.S. at 293, 97 S.Ct. at 2298, 53 L.Ed.2d 344. As stated by the court in *Dobbert,* "even though it may work to the disadvantage of a defendant, a procedural change is not *ex post facto.*" *Id.* "The following language from *Hopt v. Utah,* [110 U.S. 574, 589–590, 4 S.Ct. 202, 210, 28 L.Ed. 262 (1884) ], applicable with equal force to the case at hand, summarizes our conclusion that the change was procedural and not a violation of the *Ex Post Facto* Clause:

'The crime for which the present defendant was indicted, the punishment prescribed therefor, and the quantity or the degree of proof necessary to establish his guilt, all remained unaffected by the subsequent statute.' "

*Dobbert v. Florida,* 432 U.S. at 294, 97 S.Ct. at 2298–2299, 53 L.Ed.2d 344. Here, the amended breathalyzer regulations had no affect on the substantive offense for which petitioner was convicted, the punishment he received, or the quantity or degree of proof needed to convict him. At most, the amended regulations altered the procedure through which the degree of proof was verified. Far from being detrimental to petitioner, the procedural changes were ameliorative in that they clarified the means by which the accuracy of the breathalyzer machine would be tested. *See Dobbert v. Florida, supra* (changes in the death penalty statute between the time of the murder and the time of the trial are procedural and on the whole ameliorative, and hence there is no *ex post facto* violation).

### III.

Petitioner finally presents a two-pronged argument in challenging his conviction and the admission of his statement to the police into evidence. He claims that, if he was as intoxicated as the Commonwealth claims, then he was incapable of making a knowing, voluntary, and intelligent waiver of his right to remain silent. If, on the other hand, he was sober enough to make a knowing, voluntary, and intelligent waiver of his Miranda rights, then the evidence

was insufficient to convict him of the crime of driving while under the influence of alcohol. The court will construe this as presenting two separate issues, that is, (1) whether there is sufficient evidence to support petitioner's convictions, and (2) whether petitioner made a knowing, voluntary, and intelligent waiver of his right to remain silent.

■ In addressing whether the evidence is sufficient to sustain a conviction, a federal habeas court must examine the record to determine if upon the record evidence adduced at the trial any rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2791–2792, 61 L.Ed.2d 560 (1979). In so doing, the court must view the evidence in the light most favorable to the prosecution. *Id.* at 319, 99 S.Ct. at 2789, 61 L.Ed.2d 560. Applying this standard to the present case, it is clear that petitioner's challenge must fail.

The evidence supporting petitioner's driving while under the influence charge was outlined in the opinion of the Pennsylvania Superior Court in the following manner:

> The changes stemmed from appellant's involvement in two accidents occurring on March 4, 1985. The first of these resulted in the deaths of two children who were struck by appellant's pickup truck as he swerved out of the right lane onto the berm of the road where the children stood. Failing to stop, appellant proceeded approximately one and one-half (1½) miles farther, lost control of his vehicle, and crossed the center line, coming to a halt up an embankment on the opposite side of the road and facing in the direction from which he had come.

> Appellant was arrested after police, who had been notified that a hit and run driver was at the scene of a second accident, noticed appellant's inebriated condition. He exhibited the classic physical symptoms of intoxication, bloodshot eyes, slurred speech, impaired coordination, and exuded a pronounced aroma of intoxicants.

> Appellant was escorted to the local police station for booking, and then to the nearest breath-testing facility, where, after a delay of some two and one-half (2½) hours, analysis revealed his blood alcohol level to be .19.

*Commonwealth v. Taylor,* No. 00876 Phila.1985, slip op. at pp. 1–2 (Pa.Super. Dec. 4, 1986). The court finds these factual findings fairly supported by the record as a whole, *see generally* document 20 of record, trial transcript, and it therefore concludes that sufficient evidence was present to find petitioner guilty of driving while under the influence.

The second part of petitioner's final argument is that the conviction was obtained by the use of a confession by petitioner, which confession was illegally obtained in that petitioner did not make a knowing and voluntary waiver of his right to remain silent. *See* document 1 of record, at p. 6. Petitioner claims that, if he was as intoxicated as the Commonwealth claims, "then he was incapable of making a knowing, voluntary and intelligent waiver of his right to remain silent and his statement could not be introduced at trial." *Id.* As with petitioner's other arguments, the court finds this one to be without merit.

28 U.S.C. § 2254(d) provides that the factual findings of state courts must be presumed correct by a federal habeas court if they are fairly supported by the record. *Miller v. Fenton,* 474 U.S. 104, 105–106 & n. 1, 106 S.Ct. 445, 447 & n. 1, 88 L.Ed.2d 405 (1985); *Wainwright v. Witt,* 469 U.S. 412, 426–427, 105 S.Ct. 844, 853–854, 83 L.Ed.2d 841 (1985); *Ahmad v. Redman,* 782 F.2d 409, 411–412 (3d Cir.1986), *cert. denied,* 479 U.S. 831, 107 S.Ct. 119, 93 L.Ed.2d 66 (1986). Determinations of mixed questions of law and fact or on purely legal issues are not, however, subject to the presumption. *Wainwright v. Witt,* 469 U.S. at 426–427, 105 S.Ct. at 853–854, 83 L.Ed.2d 841; *Ahmad v. Redman,* 782 F.2d at 412. When reviewing conclusions reached by a state court on mixed or legal issues, a federal habeas tribunal's standard of review is plenary. *Wainwright v. Witt,* 469 U.S. at 428 n. 8, 105 S.Ct. at 854 n. 8, 83 L.Ed.2d 841; *Ah-*

*mad v. Redman*, 782 F.2d at 412. The statutory presumption of correctness does attach, however, to the subsidiary findings of historical fact that are relevant to the resolution of mixed questions and questions of law. *Miller v. Fenton*, 106 S.Ct. at 454.

With regard to the issue here in question, the Supreme Court in *Miller v. Fenton* held that the voluntariness of a confession under the due process clause is a legal question subject to plenary review in a federal habeas proceeding. *See* 106 S.Ct. at 451. The Court, however, expressly left open the question of "whether federal habeas courts must accord the statutory presumption of correctness to state court findings concerning the validity of a waiver [of *Miranda* rights]. *See id.* at 449 n. 3. Following *Miller*, the Third Circuit held that the voluntariness of a *Miranda* waiver is a mixed question of law and fact, subject to plenary review by federal habeas courts. *See Ahmad v. Redman*, 782 F.2d at 412–413. In reaching this conclusion, the court stated as follows:

> Before a court may conclude that a defendant validly waived his *Miranda* rights, it must first find that the defendant was aware of and understood his rights.... The findings of state courts on these questions are purely factual in nature, involving a determination as to "what happened" during an interrogation and often requiring that the state court choose between two conflicting accounts of the events to decide which is truthful. Thus, the state court findings that Hooks received and understood his *Miranda* warnings must be presumed correct if fairly supported by the record.
>
> However, this court concluded in *Patterson v. Cuyler*, 729 F.2d 925, 930, 932 (3d Cir.1984), that the voluntariness of a waiver of *Miranda* rights is a mixed question of law and fact, subject to plenary review by federal habeas courts.

*Ahmad v. Redman*, 782 F.2d at 412–413.

■ The state court found that petitioner received and understood his *Miranda* warnings. *See Commonwealth v. Taylor*, No. 00876 Phila.1985, slip op. at pp. 10–11 (Pa.Super. Dec. 4, 1986). This court must presume that finding to be correct as it is fairly supported by the record. Petitioner made his statement to the police at 10:07 p.m. on the night of the accident, approximately one hour and twenty minutes after he took the breathalyzer test. *See* document 20 of record, Trial Transcript, at pp. 315, 376–377. His rights were read to him and he indicated he understood those rights. *See id.* at pp. 376–380. Petitioner himself testified that he understood his constitutional rights as they were communicated to him. *See id.* at pp. 536–537.

The only remaining question is whether petitioner voluntarily waived his constitutional rights.

> To determine the voluntariness of a confession, the court must consider the effect that the totality of the circumstances had upon the will of the defendant.... The question in each case is whether the defendant's will was overborne when he confesses.... Although at the trial level the burden is on the government to establish, by a preponderance of the evidence, that a challenged confession was voluntary, ... on collateral review, the habeas corpus petitioner must prove involuntariness by a preponderance of the evidence.

*Miller v. Fenton*, 796 F.2d 598, 604 (3d Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 585, 93 L.Ed.2d 587 (1986).

■ Petitioner has not established his burden in the instant case. His only claim is that, if he was as intoxicated as the Commonwealth claimed, he could not voluntarily waive his *Miranda* rights. *See* document 3 of record, at p. 9. The court has already concluded that petitioner received and understood his rights. Petitioner himself testified that he wished to cooperate with the police officers and assist in their investigation as much as he could. *See* document 20 of record, at p. 537; *see also id.* at p. 382 ("Q. O.K., Alva, I've advised you of your constitutional warnings and having these rights and warnings in mind, do you wish to talk to us now? A. Yes, sir."). He stated that, while he had been drinking prior to being picked up by the

police, he was not under the influence of drugs or alcohol at the time he made his statement. *See id.* at p. 382. Finally, the court agrees with the state court's conclusion that the transcript of the statement itself indicates self-control and recollection of detail entirely consistent with petitioner's own testimony that he understood his rights and wished to cooperate in the investigation. *See Commonwealth v. Taylor,* No. 00876 Phila.1985, slip op. at p. 11; *see also* document 20 of record, Trial Transcript, at pp. 381–389–A. Thus, under the totality of the circumstances, the court concludes that petitioner's waiver of his *Miranda* rights and his decision to make a statement to the police were voluntary.[4]

## IV.

 The court has carefully examined petitioner's arguments and finds them to be without merit. The only remaining issue in this action is petitioner's motion for sanctions. *See* documents 13 and 14 of record. The motion arises out of respondents' motion to dismiss. *See* document 7 of record. Respondents' counsel made two arguments in his motion to dismiss, namely, that petitioner did not assert any cognizable grounds for relief because he did not claim that any of the factors appearing at 28 U.S.C. § 2254(d)(1)–(8) were applicable, and that petitioner "conceded" that he did not exhaust available judicial remedies. *See id.,* Commonwealth's Brief in Support of Motion to Dismiss, at pp. 2–5.

By Memorandum and Order of December 14, 1987, the court denied respondents' motion to dismiss as "patently frivolous." *See* document 11 of record, at p. 2. With regard to counsel's first argument, the court, in finding it to be meritless, noted that counsel had made the same argument in a previous case before the court. *See id.* at p. 2; *see also Bachert v. Ryan,* No. 87–0898, document 18 of record (Report of Magistrate Smyser dated August 25, 1987), at pp. 1–2 ("The respondents contend that the petitioner does not assert any cognizable grounds for the relief because he does not claim that any of the factors appearing at 28 U.S.C. § 2254(d)(1)–(8) are applicable. Those factors are not of themselves grounds for relief"). As to the exhaustion argument, the court stated as follows:

> The court has examined petitioner's submission to this court and it is unable to find the alleged concession of nonexhaustion to which respondents' counsel alludes. In fact, in his reply brief, petitioner "vehemently [takes] exception" to respondents' claim. *See* document 10 of record, at p. 2. Finally, it is obvious from the record that petitioner has exhausted his claims.

*See* document 11 of record, at p. 3.

Petitioner filed his motion for sanctions on December 29, 1987. *See* documents 13 and 14 of record. Petitioner argues that the motion to dismiss was filed "solely for the purpose of delaying the hearing by the court on the merits of petitioner's Writ of Habeas Corpus and served only to increase petitioner's cost for this litigation." *See* document 14 of record, at p. 2. Petitioner seeks monetary sanctions of $375.00 for the 4.7 hours spent in answering respondents' motion. *See id.* at pp. 4–5.

According to M.D. Local Rule 401.6, respondents' brief in opposition to the motion

---

4. Petitioner gains nothing by connecting the two prongs of his final argument in the form of a dilemma, that is,

 (1) if petitioner was intoxicated, he was incapable of voluntarily waiving his Miranda rights;
 (2) if petitioner was sober, there was insufficient evidence to convict him of driving under the influence of alcohol;
 (3) petitioner was either drunk or sober;
 (4) therefore, petitioner was either incapable of voluntarily waiving his Miranda rights or there was insufficient evidence to convict him of driving while under the influence.

This argument is persuasive only if that third premise is accepted, and the court does not accept it. As the court has already concluded, the Commonwealth presented sufficient evidence to find the petitioner guilty, and petitioner validly waived his right to remain silent. Thus, at different times on the night of his arrest, petitioner was both "drunk" (*i.e.,* legally intoxicated) and "sober" (*i.e.,* sufficiently composed to understand and validly waive his Miranda rights). Moreover, one may be under the influence of alcohol so as to impair his ability to drive, while, at the same time, he may be able to understand questions being asked and to be voluntarily responsive to such questions.

for sanctions was due on or before January 13, 1988. When no such brief was forthcoming, the court issued an Order on March 2, 1988 directing respondents to respond within ten (10) days or have the court deem the motion unopposed. *See* document 18 of record.

Respondents' counsel then filed a two page brief in opposition to the motion for sanctions. The brief cites one case, that from the Ninth Circuit Court of Appeals. *See Zaldivar v. City of Los Angeles*, 780 F.2d 823 (9th Cir.1986). Counsel argument, in its entirety, is as follows:

> The second prong of the Rule 11 certification is that the signer represents that the paper filed "is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."—
>
> It can be invoked if an initial pleading (Motion to Dismiss) is signed for improper purpose. If an element of harassment is detected, it may account for the imposition of [sanctions].
>
> Respondent's Answer failed to contain a Motion to Dismiss.[5] Petitioner considered Respondent's failure to contain a Motion to Dismiss as a Moot Court denial. If Petitioner considered Respondent's Motion to Dismiss as a Moot Court denial, certainly any extensive research or stenographic efforts on Petitioner's behalf was unnecessary.
>
> Without Respondent's Motion to Dismiss, a clear element of harassment cannot be detected. Respondent's Answer contradicted the substantive legal issues raised by Petitioner. The Answer's contradictions may have been insufficient. However, a clear case of improper purposes cannot be deducted from an insufficient Answer.

*See* document 19 of record, at p. 2.

The Third Circuit Court of Appeals recently published an extensive opinion regarding the proper use of Rule 11. *See Gaiardo v. Ethyl Corp.*, 835 F.2d 479 (3d Cir.1987). Because respondents' counsel is apparently unfamiliar with the case, the court will quote it in pertinent part:

> The standard for testing conduct is reasonableness under the circumstances.... As a commentator has observed, *the Rule does not permit use of the "pure heart and empty head" defense* ....
>
> The Rule imposes an obligation on counsel and client analogous to the railroad crossing sign, "Stop, Look and Listen." *It may be rephrased, "Stop, Think, Investigate and Research" before filing papers either to initiate a suit or to conduct the litigation.* These obligations conform to those practices which responsible lawyers have always employed in vigorously representing their clients while recognizing the court's duty to serve the public efficiently. It bears repeating that the target is abuse—the Rule must not be used as an automatic penalty against an attorney or a party advocating the losing side of a dispute....
>
> *The Advisory Committee notes that willfulness is relevant in selecting a sanction.* In addition to financial penalties courts may sanction by warning, oral reprimands in open court, or written admonition....
>
> \* \* \* \* \* \*
>
> The goal of Rule 11, therefore, is not wholesale fee shifting by correction of litigation abuse. The Rule authorizes "reasonable" fees, based on what is fair and reasonable in the particular circumstances—not necessarily actual fees. When counsel fees are sought under Rule 11, the duty of mitigation should minimize any excessive burden on the

---

5. As noted in this court's previous Order, *see* document 11 of record, at p. 1 n. 1, respondents submitted an answer to the petition for writ of habeas corpus and a brief in support of a motion to dismiss without ever having filed a separate motion to dismiss. Petitioner asked the court to deny the motion as moot for that reason, but he then proceeded to address the merits of the motion. *See* document 10 of record. Since the respondents' arguments were discernible from the supporting brief, the court addressed the motion on the merits. *See* document 11 of record.

sanctioned party and diminish the tactical value of orchestrating motions to increase the cost of litigation for the other side.

\* \* \* \* \* \*

The Committee Note observes that "[t]he rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." The Rule is not breached if after reasonable legal research and adequate factual investigation, a party and counsel in good faith decide to challenge existing law....

Counsel or client violates the Rule by mounting an attack on existing law not in good faith but rather prompted by such improper considerations as harassment or undue delay. Creativity by itself is not enough. "The creativity must be in service of a good faith application of the law or at least a good faith request for a change in the law." However, distortion of a statute is "precisely the sort of creativity Rule 11 should chill."...

Sanctions are appropriate "if a pleading, motion, or other paper is signed" in contravention of the Rule. In applying this criterion, the Committee Notes emphasize that the "court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion or other paper was submitted."...

\* \* \* \* \* \*

Notwithstanding the emphasis on the time of initial submission, however, parties will not be entitled to continuing immunity if they acquire or should acquire knowledge under the Rule's standard before a later filing. *Subsequent papers must be judged by information available when they are filed.*

*Id.* at 482–484 (emphasis added).

Based on *Gaiardo*, the court finds this to be an appropriate case for sanctions. As

stated therein, the court "should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion or other paper was submitted." *Id.* at 484 (quoting *Eavenson, Auchmuty & Greenwald v. Holtzman,* 775 F.2d 535, 540 (3d Cir.1985)). Here, respondent's counsel knew or should have known at the time he signed his "motion," based on the Magistrate's Report in *Bachert v. Ryan,* that the argument he was presenting to this court was meritless. Moreover, even a cursory reading of the initial documents submitted by petitioner should have demonstrated to respondents' counsel that petitioner had exhausted his remedies. Thus, the court finds that respondents' counsel violated the obligation imposed by Rule 11—to "Stop, Think, Investigate and Research" before filing papers with the court. *See Gaiardo v. Ethyl Corporation,* 835 F.2d at 482.

As to the appropriate sanction, the court will issue a warning to respondents' counsel in this case, Attorney Joseph C. Giebus. While Rule 11 "does not permit use of the 'pure heart and empty head' defense," *see id.* (quoting Schwarzer, *Sanctions Under the New Rule 11—A Closer Look,* 104 F.R.D. 181, 187 (1985)); *see also Eastway Construction Corporation v. City of New York,* 762 F.2d 243, 253 (2d Cir.1985) ("Simply put, subjective good faith no longer provides the safe harbor it once did"), willfulness is relevant in selecting a sanction. *Gaiardo v. Ethyl Corporation,* 835 F.2d at 482. Here, respondents' counsel's conduct does not so much demonstrate willfulness as it does a misconception of proper federal habeas corpus procedure. *Cf.* document 11 of record, at pp. 3–4 n. 2. While such misconception is sufficient to defeat monetary sanctions in the present case, counsel is hereby put on notice that frivolous motions to dismiss and untimely and unresponsive two-page briefs will not be tolerated in the future.[6]

An appropriate Order will issue.

---

6. The court rejects respondents' counsel's argument that, because he failed to file a separate motion to dismiss, *see supra* at n. 5, he should not be sanctioned. First, counsel apparently incorporated his "motion to dismiss" into his answer. *See* document 7 of record, at pp. 2–3, ¶¶ 17–18. By signing that answer, counsel brought himself under the reach of Rule 11.

## ORDER

NOW, this 12th day of May, 1988, in accordance with the reasoning set forth in the accompanying Memorandum, IT IS HEREBY ORDERED THAT:

(1) Petitioner's petition for habeas corpus is denied.

(2) Petitioner's motion for sanctions is granted, with sanctions limited to a warning and reprimand to respondents' counsel.

(3) This Memorandum and Order shall serve as a written warning and reprimand to respondents' counsel, Joseph C. Giebus.

(4) Any appeal from this Order will be deemed frivolous, lacking in probable cause, and not in good faith.

(5) The Clerk of Court is directed to close this case.

Second, while petitioner argued that the "motion" should be dismissed as moot because no separate motion was filed, he went on to argue that it should be dismissed on its merits in the event that the court elected to treat the motion on its merits. Thus, contrary to counsel's suggestion, petitioner's counsel was required to expend some "research and stenographic efforts" to answer the motion.

In deciding on an appropriate sanction, the court has considered that petitioner's counsel was required to expend such "efforts" in answering the motion. As the motion was clearly frivolous, however, such expenditures should have been minimal, and, more important, the court has found that respondents' counsel did not act willfully. Thus, the court will deny petitioner's request for monetary sanctions.